MICHAEL COLIHAN- ATTORNEY AT LAW

44 Court Street
Suite 906
Brooklyn, New York 11201

Phone (718) 488-7788

SENT VIA FAX & email to  SFLIT

POSTED VIA ECF
April 3, 2015

The Honorable Colleen Mc Mahon
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
NY, NY 10007

RE: Erica Vasconcellos, ad Admin of the Estate of
        Dashawn Vasconcellos v the City of NY
        12- cv- 8445

Dear Judge McMahon:

I represent the plaintiff in this action. I write this letter in response and opposition to the City's letter dated yesterday seeking an extension of discovery, to address a further discovery matter and for sanctions against the Law Department. This is addressed to Your Honor because I have been told Judge Pitman is out of town.

By way of background, on November 21, 2009 Dashawn Vasconcellos, the plaintiff's intestate, was shot and killed by members of the New York City Police Department. He was 18 years of age at the time. I believe that he was fired upon 15 times, with a number of wounds to his back. At least three of his exit wounds exhibit evidence of something called shoring. Shoring takes place when a human body is shot while against a hard surface such as a sidewalk or city street. In short, there is scientific evidence to show that several of the wounds were inflicted while the deceased was lying prostrate on the street or sidewalk. This information is in the city Medical Examiner's Report. The Court referred to the actions of the defendants as a "police murder" during one of the first conferences concerning this matter.

The City claims that a gun was recovered near the body of the deceased. It was tested for both DNA and fingerprints and nothing linking this gun to the deceased was recovered. The way in which one knows that this gun was in the possession of the deceased is because the people that murdered him say so.

There were two civilians present at the scene of the shooting. The city has claimed in the past that they were not witnesses to the murder and one, Cordel Rose, is the person they now seek to call as a non party witness. The City claims that he was served with a subpoena  and was supposed to appear yesterday. I was present at the Law Department from 12; 30 pm to 1;40 pm.

Although a court reporter was present, the City attorney Mr. Weingarten refused to allow me access to her to make a record or inquire as to what efforts, if any, the City had made in verifying his attendance, etc. I think that this type of behavior is unlawful and outrageous and is the hallmark of a law firm who believes it can do whatever it wishes. I therefor ask for a sanction.

I would like the Court to know that we have deposed one non party witness, one Derbie Michel. Mr. Michel testified that he was about 20 feet away from the deceased right before the shooting started. He observed him with his hands in the air and on his knees saying " I give up" immediately before the discharge of the hail of bullets that killed him. He never saw him with a gun. How the City can, in good faith , make a motion for summary judgement with this type of testimony is beyond me and will be the basis for a further sanctions motion if they do.

It was claimed by the City attorney Mr. Weingarten at the deposition of Mr. Michel that his clients had made an audio recording of a statement of Cordel Rose, the witness they first claimed did not see anything but whom they now seek to call as a non party witness. This was supposedly recorded several hours after the murder.  I made an application to Judge Pitman for a copy of that recording, mentioning that I was aware of but one police report regarding Mr. Rose, a copy of which is attached as Exhibit "A', and as can be seen, it mentions nothing about a audio recording.

At a conference before Judge Pitman, Mr. Weingarten of the Law Department offered a heavily redacted document annexed as Exhibit B as evidence that said recording existed. As one can see it does not even contain the name of Mr. Rose.  The pertinent part is on the second page, second paragraph beginning with "0325 hrs"I would ask the Court to consider all this when evaluating my adversary's credibility. Upon my application Judge Pitman ruled the City had to produce a copy of that recording.

After another application the City finally produced a copy of that audio record. After playing it several times I can hear perhaps 50% of what the interviewing NYPD employee is saying and almost nothing of what Mr. Rose is saying. In this recording of about 25 minutes I can hear Mr. Rose saying " two or three" and " yea".

I listened to the City's copy of the recording yesterday and it was no better. I wanted to place this information on the record but Mr. Weingarten would not allow that.

I am in the process of copying the aforesaid record and ask the Court to allow a few days for me to send a copy before ruling on this portion of my application. I think the City should be required to produce an audible copy of that recording or be precluded from using it. Mr. Weingarten claims that Mr. Rose said certain things which contradict Mr. Michel's version of the incident and this information is simply not on the recording

The City has had over two years to depose Mr. Rose. This is more delay and gamesmanship that should not be tolerated by this Court. I ask the City's application be denied .

Thank you for your attention and consideration

MC/ll                                                    Very Truly Yours,

                                                            Signed

                                                    Michael Colihan

cc: Law Department