UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
ERICA VASCONSELLOS as Administrator of the
Estate of Dashawn Vasconcellos, deceased and
ERICA VASCONCELLOS, individually,

                        Plaintiff         PLAINTIFF'S
                                     MEMORANDUM OF LAW
                                     IN OPPOSITION TO THE
                                     CITY'S MOTION FOR
                                     SUMMARY JUDGEMENT

                                   12-cv-8445



THE CITY OF NEW YORK, SERGEANT JOSEPH CRUZADO,
Sh #11022 DET. RAFAEL RAMOS, Sh.# 6794, DET.
DONNELL MYERS Sh.#103014, SERGEANT RICHARD
ZACCARASE, Sh. #1818, & POLICE OFFICER JOHN DOE 1-10,

                        Defendants.
--------------------------------------------------------------------------------X


MICHAEL COLIHAN, ESQ.
Attorney for Plaintiff
44 Court Street
Suite 906
Brooklyn, NY 11201
(7180 488-7788


TABLE OF AUTHORITIES

**Cases**                                                          **Pages**

*Berger v. United States,* 87 F.3d 60, 65 (2d Cir.1996) ................................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).... 7

*City of Canton v. Harris*, 489 U.S. 378, 388 (1989).......................................... 8

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000).................... 6

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F. 2d 195, 198 (2d Cir. 1929)..... 4, 10

*Okin v. Village of Cornwall-On-Hudson Police Dept.* 577 F.3rd 415, 439 (2d Cir. 2009)  8

*Phelps v. City of New York,* 04 CIV. 8570 (DLC) (S.D.N.Y. June 27, 2006)................. 16

*Reynolds v. Giuliani*, 506 F 3d 183, 192 (2d Cir. 2007)....................................... 8

*Riscilli v. Gibson Guitar Corp*. 605 F. Supp 2d 558, 569 (S.D.N.Y. 2009)..................... 16

*Sorlucco v. New York City Police Dept.* 971 F 2nd 864, 870-871..................................... 16

*Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir.1992).................................... 11, 12

**Rules and Regulations**

56 NYCRR §1-03 (a)(1) ................................................................. 16

New York Rules of Professional Conduct 1.1(c)(2) ....................................... 9

New York Rules of Professional Conduct 1.7................................................ 9

New York Rules of Professional Conduct 17 (b)............................................. 9

New York Rules of Professional Conduct 1.0 (f)............................................ 9


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
ERICA VASCONSELLOS as Administrator of the
Estate of Dashawn Vasconcellos, deceased and
ERICA VASCONCELLOS, individually,

                        Plaintiff        PLAINTIFF'S FIRST MEMORANDUM OF LAW IN OPPOSITION TO THE CITY'S MOTION FOR SUMMARY JUDGEMENT

                                            12-cv-8445 (CM) (HBP)

THE CITY OF NEW YORK, SERGEANT JOSEPH CRUZADO,
Sh #11022 DET. RAFAEL RAMOS, Sh.# 6794, DET.
DONNELL MYERS Sh.#103014, SERGEANT RICHARD
ZACCARASE, Sh. #1818, & POLICE OFFICER JOHN DOE 1-10
----------------------------------------------------------------------------X

**<u>Preliminary Statement</u>**

The plaintiff respectfully reminds the Court that this motion has been brought for summary judgment on the *Monell* claim against defendant City of New York without any *Monell* discovery having been complete.  Initially the defendants sought to stay *Monell* discovery claiming that there was no evidence that there had been any constitutional violation and claiming that there was no evidence that the individual defendants' story of a justified shooting of a person carrying a pistol had been controverted. Defendants indeed initially brought such a motion but withdrew the same after the deposition of non party witness Derbie Michel. Mr. Michel gave a coherent and credible description of the events of the night in question which were completely at odds with the defendant's testimony.  It was clear that the originally intended motion could not go forward since it was now undoubtedly an issue of fact as to whether there was a constitutional

3

violation.

Defendants have now taken a different tack. They assert in the face their own prior statement of "undisputed" facts, that it is now undisputed that indeed the decedent Dashawn Vasconcellos "did not have a firearm or weapon of any kind." (Paragraph 36 of defendants Rule 56.1 Statement). Indeed their counsel now states "The only way to describe Vasconcellos' death–based upon the currently undisputed facts – is an execution by firing squad." and that "it is common sense that the heinous murder of Vasconcellos- as described by Michel– was unconstitutional and illegal without the need for training or supervision. (Defendants' Memorandum of Law In Support of Their Motion for Summary Judgment p.7.)

Problems abound, the least of which is that prior statement of "undisputed facts", even though withdrawn, may constitute admissions that may be presented to a jury in opposition to the very facts the defendant now claims are undisputed. See *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F. 2d 195, 198 (2d Cir. 1929) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent.").

Indeed in a footnote to their statement of "undisputed" facts state that "Defendants note that the facts contained herein are undisputed solely for purposes of defendant's motion for summary judgment, and reserve the right to dispute any such fact in the event this motion is

denied." Leaving aside the problem that this seems to indicate that if the Court were to deny the defendant's summary judgement motion, that the individual defendants have thereby bound themselves by the judicial admission of their attorney to the assertion that they are murderers, pure and simple, of Dashawn Vasconcellos, the problem charitably can be seen to stem from a mistaken impression of law by the defendants. Defendants state that "Defendants, as they must, are construing the record in the light most favorable to plaintiff,"(Defendant's 56.1 Statement Page Seven Footnote 5). This construal of the record as the cold blooded execution of Dashawn Vasconcellos might be the light most favorable to plaintiff if this were a motion for summary judgment in favor of the individual defendants. But this is a motion for dismissal of the *Monell* claims against the City defendant only. The construal of the record on this motion must therefore be in the light most favorable to plaintiff *on this motion*. That which is obvious from defendants' argument is not that the defendants murdered Dashawn in cold blood, but that defendants killed an unarmed man for lack of proper training in handling the particular situation and for firing multiple, and an excessive number of rounds without assessing the situation properly. It is clear that a rational jury might very well conclude that this was a cold blooded execution by rogue cops for which the City is not liable. But it is frivolous to suggest that a rational jury would not come to another conclusion. Specifically, a look at conflicting testimonies as they are now known might indicate that the officers indeed shot an unarmed man as a result of poor training and discipline, after a confrontation caused by a policy and practice of the city to turn a blind eye to the harassment of young black males by police officers in general and these officers in particular (depending on the outcome of Monell discovery), and then proceeded to cover up the same by

5

planting a weapon.

Certainly, it must follow on this motion, even accepting defendant's theory of "undisputed for this motion only," that if Dashawn Vasconcellos was unarmed, then the perjury of the individual officers and the planting of evidence by the individual officers must also be undisputed for this motion. So too a rational jury could thus conclude (pending *Monell* discovery) that the individual officers lied with respect to the shooting to cover up the fact that Dashawn was unarmed, but that had these defendants been properly trained and disciplined, (and had not the City shown deliberate indifference to their training and discipline) they would not have started the confrontation with three unarmed youths and would have properly assessed the situation at the end of the chase and not shot and hit the young unarmed man 11 times. Furthermore, a rational jury might conclude (again pending *Monell* discovery) that the City also showed a deliberate indifference (as it apparently does now after evidence which by their own theory shows murder and perjury) to what really happened, and that the individual defendants knew they could rely on the indifference of the City in their perjuries and planting evidence. But these must await *Monell* discovery.

## POINT I

### SUMMARY JUDGMENT SHOULD NOT BE GRANTED ON THE <u>MONELL</u> CLAIM AS THERE HAS BEEN NO <u>MONELL</u> CLAIM

Summary judgment should only be granted "[i]f *after discovery*, the nonmoving party `has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97

6

(2d Cir.2000)) citing *Berger v. United States,* 87 F.3d 60, 65 (2d Cir.1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (alteration in original and emphasis added). Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. *Hellstrom* 201 F.3d at 97.

As the Court is aware, discovery with respect to the alleged *Monell* violations by defendant City was suspended at the request of the City on the assumption by defendants that no evidence would appear to contradict the defendants' contention, contained in three of the individual defendants deposition testimonies, that Dashawn Vasconcellos was pointing a firearm at police officers when he was shot.   However further discovery revealed a very credible eyewitness account; that of non party Derbie Michel- that showed that Dashawn Vasconcellos was unarmed and surrendering just before dying in the fifteen shot hail of gunfire for which the defendants were responsible.  So credible is this account of Derbie Michel that the defendants now assert as undisputed that three of their number actually murdered Dashawn Vasconcellos in cold blood and that therefore under no theory can the city be held liable.

Thus defendants cannot deny that discovery may indeed reveal what defendants initially claim is implausible. Likewise, discovery is necessary as to what the defendant City knew or should have known about the individual defendants, how the City trained or did not train the individual defendants, what the individual defendants have done or not done on duty in the past, how the City disciplined or did not discipline the individual defendants in the past, how the City has modified or not modified its training, discipline, supervision and screening in response to

similar shootings or other incidents, and whether there are common practices in the City or New York Police Department which turn a blind eye to certain constitutional abuses or excesses. Given the history of at least some of the defendants, a rational jury might well conclude that one or more of the defendants had no business being employed as police officers at all and that responsible police managers would have fired them, or at least limited their employment to jobs that did not involve contact with the public. Please see the plaintiff's second memorandum of law containing confidential material for more on this point.

    Without such disclosure of these basic facts it cannot be determined for instance, whether there indeed was a failure to train or supervise that amounts to deliberate indifference to rights of those with whom the individual defendants interact, see *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) or whether it has happened "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious , and the inadequacy so likely to result in the violation of constitutional rights.*" Id.* at 390. Nor can it be determined whether without discovery whether the City was "faced with a pattern of misconduct" and "does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." See *Okin v. Village of Cornwall-On-Hudson Police Dept.* 577 F.3rd 415, 439 (2d Cir. 2009) quoting *Reynolds v. Giuliani*, 506 F 3d 183, 192 (2d Cir. 2007).

    It should be noted that such indifference or acquiescence is not to be limited solely to events involving shootings or killings. After all, based upon both the deposition testimony of Derbie Michel and the testimony before the Court of Cordell Rose, the record when construed in the light most favorable to the non-movant plaintiff as it must, *Okin* 577 F3rd at 427, shows that

8

all four individual defendants jumped out of the unmarked car with guns, did not identify themselves as police, and commenced to chase Dashawn Vasconcellos, who had committed no violation of law, with guns drawn before shooting him.  Thus he suffered violations of his constitutional rights before being mortally wounded.

But even if we accept defendant's focus that we are speaking only of a cold-blooded murder and that "simply put Detective Ramos, Lieutenant Zaccarese and Sergeant Cruzado's conduct was so deplorable and self-evidently illegal that defendant City is entitled to rely on a common sense theory that its officers – even without training, would not behave this way." (Defendants Memorandum of Law p. 8), the defendants own actions in bringing this motion are evidence of a culture, of a custom and usage, that police officers will feel empowered to engage in constitutional violations, excessive force, and even cold blooded murder without fear of consequence.  It is after all without doubt that the attorney for all the defendants has brought this motion and made these assertions of undisputed fact.  The Notice of Motion, the Statement of Undisputed Facts, the Memorandum of Law and the Courts docket sheet all list the same attorney for each defendant.  New York Rules of Professional Conduct 1.1(c)(2) states that "a lawyer shall not intentionally. . .prejudice or damage the client during the course of the representation except as permitted or required by these Rules." Rule 1.7 of the New York Rules of Professional Conduct (the "Rules") prohibits a lawyer from representing a client if a reasonable lawyer would conclude that the representation will involve the lawyer in representing differing interests, unless the clients give informed consent, where consent is permitted by Rule 1.7(b).  The term "differing interests" is defined in Rule 1.0(f) and including "every interest that will adversely

9

affect either the judgment or the loyalty of a lawyer to a client, whether it be conflicting, inconsistent, diverse, or other interest."

Construed in the light most favorable to plaintiffs (and counsel for the defendants, for whom no imputation of ethical violation is made), it must therefore be assumed that the individual clients have given their consent in writing to have their own lawyer assert that it is undisputed that they have committed cold blooded murder, and the necessary conclusion that they have perjured themselves and manufactured evidence in order to free the City from *Monell* liability. For the purpose of this motion these facts construed in the light most favorable to the plaintiff indicate that the individual defendants and their lawyer have no fear that any such admissions and possible finding of undisputed facts will ever result in disciplinary action, loss of employment, or prosecution, or in any way work adversely to the individual officers interests. Thus, as outrageous it may seem and as unsettling as it may be, it is not beyond the pale to conclude that there may indeed be further evidence of a custom and practice of turning a blind eye to excessive force up to and including murder, such that police officers feel and are released from any fear of consequence. This is competent evidence, whatever legal stratagem is followed by the parties. Whether or not any defendants' statements are conclusive judicial admissions on behalf of his clients, "it still remains as a statement made by an authorized agent, and as such is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent. If the agent made the admission without adequate information, that goes to its weight, not to its admissibility." *Kungling Jarnvagsstyrelsen v. Dexter & Carpenter* 32 F.2d 195, 198 (2d Cir. 1929).

The motion for summary judgment should be denied until *Monell* discovery is complete.

## POINT II

### THE SHOOTING OF DASHAWN VASCONCELLOS WAS A "DIFFICULT CHOICE" OF THE SORT TRAINING WOULD MAKE LESS DIFFICULT

Defendant argues that the shooting of Vasconcellos was not a "difficult choice" of the sort that training would make less difficult.

To demonstrate deliberate indifference, a plaintiff must establish three facts: (I) that a policymaker knows to a " moral certainly that the municipality's employees will confront a certain situation; (ii) either that the situation presents the municipal employee with a difficult choice of the type that training or supervision will make less difficult, or that there is a history of municipal employees improperly handling the situation; and (iii) that the wrong choice by the municipal employee will often cause the deprivation of an individual's constitutional rights. See *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir.1992).

It is the second prong of this test that defendants argue can never be met by plaintiff. Yet the Second Circuit is clear in *Walker*:

> Whether to use deadly force in apprehending a fleeing suspect qualifies as a " difficult choice " because more than the application of common sense is required. Instead, police officers must adhere to the rule of *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that deadly force may constitutionally be applied to a fleeing suspect only when " the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm " and when, " where possible, some warning has been given. " Id. at 11-

> 12, 105 S.Ct. at 1701. A choice might also be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice.

974 F.2d at 297.

In order to escape the obvious conclusion that the instant case is precisely that described in *Walker*, defendants must assert in contradiction to the individual defendant's own testimony that Vasconcellos was not fleeing, and that the individual defendants did not believe, erroneously or not, that he posed some type of threat. Yet a reasonable jury could quite easily conclude based upon that once the chase was initiated, rightfully or wrongfully, a difficult choice was presented at least to Officers Cruzado, and Zaccarese who it could be concluded actually did not actually see the weapon but heard the single shot of officer Ramos. This is precisely a situation where "although the proper course is clear, the employee has powerful incentives to make the wrong choice." *Id.* The proper course is clear– upon hearing a shot of unknown origin the officer should assess the situation and determine just where the shot came from– but there will be powerful incentives not the least of which is fear, anger and an instinct for self preservation to begin firing immediately and multiple times.

There is deposition testimony by defendant Cruzado which is significant in this regard:

Q. Have you ever heard of the term "a double tap"?

A. Yes.

Q. Would it be fair to say that in a combat situation you fire twice and stop and see what's going on?

> MR. KUNZ: Objection.

You can answer.

Q. Have you ever heard that?

A. Have I ever heard of that?

Q. Yes.

A. I was never trained in that from the police department.

Q. Did you receive any training—

Actually, who did you hear that from? Was that an instructor or somebody else?

A. From military friends.

Q. I see. Were you in the service yourself?

A. Yes.

Q. What branch?

A. Marine Corps.

Q. And do they teach you anything in a combat situation like this as to how many times you should fire?

A. Who?

Q. The New York City Police Department.

MR. KUNZ:   Objection.

You can answer.

A. You fire until the threat is eliminated?

Q. How do they tell you to gauge when a threat is eliminated?

MR. KUNZ:   Objection

You can answer.

> A. When you don't feel threatened anymore.
>
> Q. Well, when you are shooting at an armed man, do they tell you should shoot until he falls, until he stops firing, until he raises his hands and surrenders? Do they give you any guidelines as when you feel the threat is neutralized?
>
> MR. KUNZ: Objection.
>
> You can answer.
>
> A. You shoot until you feel the threat is neutralized.

Cruzado Dep. 122:21 - 124:21

Thus there is evidence from a defendants own testimony that the City does not in fact train its police officers to make the difficult choice of not firing, or stopping after only firing twice to assess the situation, but actually trains the officers to follow "the powerful incentives to make the wrong choice," i.e. "you shoot until you *feel* the threat is neutralized."

In the case at bar both officer Cruzado and Zaccarese respectively fired six times and eight times in rapid succession. A total of 14 shots were fired between them (plus one from Officer Ramos). 11 shots struck Dashawn Vasconcellos. It can be seen that in this case, had the officers, for instance, been trained in the "double tap method" which Officer Cruzado knew from his military friends Dashawn Vasconcellos might very well be alive since after 4 shots, the officers would have assessed the situation and seen that he was unarmed and that the single shot had originated from Officer Ramos.

It is undisputed that Dashawn Vasconcellos had no weapon, however the record indicates that training offered by the city does not provide for officers to slow down and assess whether in fact a person has a weapon.

It is apparent also that *Monell* discovery is necessary to determine the number and nature of police shootings involving rapid successive firing which resulted in deaths, as well as incidents where officers have rapidly discharged multiple rounds on the basis of hearing another officers weapon discharge, and whether the City has been deliberately indifferent to the problem.

Summary judgment on the *Monell* violations should be denied the defendants.

## POINT III

### THERE IS EVIDENCE IN THE RECORD OF OTHER CONSTITUTIONAL VIOLATIONS IN ADDITION TO THE SHOOTING OF DASHAWN VASCONCELLOS

In *Phelps v. City of New York,* 04 CIV. 8570 (DLC) (S.D.N.Y. June 27, 2006), the district court held that where a defendant officer had stated that a park closed at dusk, while the plaintiff testified that a sign reading "Park closes at 10:00 P.M." there was evidence sufficient to defeat summary judgment on the question of whether the arrest of the plaintiff for trespassing was in fact reasonable.

Each of the individual defendants claim that in some manner or other the police witnessed a violation of the law in seeing three black males leave Bayswater Park at or around 11:30. Cruzado Dep. 51:19-20. It is claimed that the park was closed and thus the presence of the men in the park was a violation justifying stopping them. Derbie Michel testified that in fact the three friends, Dashawn Vasconcellos, Derbie Michel and Cordell Rose had not been in Bayswater Park. However even assuming that the individual defendants were accurate as to location, they are unclear as to exactly when the park closes. Officer Cruzado for instance testified that he believed the park closed at 9:00. Cruzado Dep. 51:16-18. Officer Ramos testified that it closed

15

at dusk. Ramos 30:17-18.

Given the assertion by the defendants that it is undisputed that Dashawn Vasconcellos was unarmed and therefore that the three individual defendants, Cruzado, Ramos and Zaccarese have falsely testified that Dashawn had a weapon, a rational jury could conclude that the defendants' testimony as to the park closing time, or indeed any of their testimony, need not be believed on the maxim of *falsus in uno, falsus in omnibus*. See e.g. *Riscilli v. Gibson Guitar Corp*. 605 F. Supp 2d 558, 569 (S.D.N.Y. 2009).  Indeed if the defendants were willing to lie about the weapon it would be easy to lie about the alleged violation that precipitated the encounter.  However the *Monell* question  is whether there was the "existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage" see *Sorlucco v. New York City Police Dept.* 971 F 2nd 864, 870-871.

The plaintiff respectfully draws The Court's attention to the New York City Department of Parks Regulations at 56 NYCRR §1-03 (a)(1) which states: "Persons may enter and use the parks from 6:00 A.M. until 1:00 A.M. unless other open hours are posted at any park."   Absent actual evidence in the record regarding the closing time of Bayswater Park in November of 2009, construing the record in favor of the non-moving party, one must conclude that Bayswater Park actually closed at 1:00 A.M.  If that is the case then there is a question which can only be answered by further discovery– as to whether there was a custom of stopping people for a non-violation and whether precinct commanders and other policy making officials acquiesced in the practice of stopping persons near parks on the pretext that they had been in the park, or had been

16

in the park after closing, when in fact they had either not been in the park or that they had been in the park before closing.

If such a pattern of unconstitutional conduct were permitted through the active or passive indifference of the City to such a violation of Constitutional rights it is a very short line to draw from that custom and usage to the events which precipitated the chase of Dashawn Vasconcellos and the entire situation which resulted in his demise. But that custom or usage would also be an independent constitutional violation for which the City would be liable under *Monell* even had it not led to Dashawn's shooting and death.

Plaintiff is certainly entitled to discovery at least as to the custom and usage regarding the stopping of young men around Bayswater Park and other parks throughout the Precinct in which these events took place.

## **CONCLUSION**

The defendants' motion for summary judgment dismissing the complaint against the defendant City should be denied in its entirety.

Respectfully submitted,   /s/ This is an electronic signature

                                                  Michael Colihan, Esq.
                                                  Attorney for Plaintiff
                                                  44 Court Street, Suite 906
                                                  Brooklyn, NY 11201
                                                  (718) 488-7788

To:     By ECF and Mail
Zachary W. Carter
Corporation Counsel of the City
of New York
Attorney for Defendants City of New
York, Sergeant Cruzado, Detective
Ramos, Detective Myers and
Lieutenant Zaccarese
100 Church Street, Room 3-188
New York, NY 10007

        Attention:     Richard Weingarten, Esq.