UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------- x

ERICA VASCONCELLOES as Administratrix of the Estate of
Dashawn Vasconcellos, deceased and ERICA VASCONCELLOS,
individually,

                                      Plaintiffs,

-against-

THE CITY OF NEW YORK, SERGEANT JOSEPH CRUZADO,
Sh. #11022 DET. RAFAEL RAMOS, Sh. # 6794, DET.
DONNELL MYERS, Sh. #10314, SERGEANT RICHARD
ZACARESE, Sh.#1818, & POLICE OFFICER JOHN DOE 1-10,

                                        Defendants.
-------------------------------------------------------------------------------- x

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

12 Civ. 8445 (CM)(HBP)

        Defendants City of New York, Sergeant Cruzado, Detective Ramos, Detective Myers, and Lieutenant Zacarese submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which they contend there is no genuine issue to be tried:

**PROCEDURAL BACKGROUND**

        1.     On November 9, 2012, plaintiff Erica Vasconcellos filed a complaint in the United States District Court for the Southern District of New York asserting claims under 42 U.S.C. § 1983, individually and on behalf of her deceased son, Dashawn Vasconcellos ("Vasconcellos"), arising from a shooting which occurred on November 21, 2009. *See* Plaintiff's Complaint, Docket Entry No. 1.[1]

        2.     Plaintiff's Complaint originally named the City of New York and "Police Officer John Doe 1-10" as defendants. *See* Plaintiff's Complaint, Docket Entry No. 1.

---

[1] For the sake of clarity, defendants will refer to Erica Vasoncellos by her full name and Dashawn Vasconcellos as "Vasconcellos."

3. On January 30, 2013, plaintiff filed an Amended Complaint adding as defendants Sergeant Cruzado, Detective Ramos, Detective Myers, and Lieutenant Zacarese. *See* Plaintiff's Amended Complaint ("PAC"), annexed to the Declaration of Richard Weingarten dated February 10, 2015 ("RW Decl."), as Ex. A; *see also* Docket Entry No. 11.

4. Plaintiff's Amended Complaint contains two causes of action under § 1983: (1) excessive force; and (2) municipal liability ("*Monell*" claim). *See* PAC, Ex. A, at ¶¶ 18, 28, 29.

5. On October 11, 2013, defendants moved to dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c) on the grounds that: (1) all claims against the individual police officers are time-barred; and (2) Erica Vasconcellos lacks standing to assert § 1983 claims in her individual capacity. *See generally* Docket Entry Nos. 20 – 22, 27 – 28.

6. The parties engaged in discovery during the pendency of defendants' motion. *See* Docket Entry Nos. 19, 23.

7. On October 2, 2014, the Court issued an opinion dismissing: (1) all claims against Sergeant Cruzado, Detective Ramos, Detective Myers, and Lieutenant Zacarese; and (2) all claims brought by Erica Vasconcellos in her individual capacity. *See* Docket Entry No. 52, at pp. 6, 17.

8. As a result, only plaintiff's *Monell* claim against the City of New York remains. *See* Docket Entry No. 52, at p. 21.

9. On November 7, 2014, the Court granted defendants' request to stay discovery related to plaintiff's *Monell* claim pending resolution of the within motion for summary judgment regarding the alleged underlying constitutional violation: the November 21, 2009 shooting. *See* Docket Entry No. 63.

**MATERIAL UNDISPUTED FACTS RELATED TO NOVEMBER 21, 2009 SHOOTING[2]**

10.     As of November 2009, Detective Ramos, Detective Myers, Lieutenant Zacarese, Sergeant Cruzado were assigned to the Queens Gang Squad.[3]  *See* Relevant excerpts of the deposition of Detective Rafael Ramos, dated June 30, 2014 ("Ramos Dep."), annexed to RW Decl. as Ex. B, at 21:6 – 8; Relevant excerpts of the deposition of Detective Donnell Myers, dated July 23, 2014 ("Myers Dep."), annexed to RW Decl. as Ex. C, 11:4 – 7; Relevant excerpts of the deposition of Lieutenant Richard Zacarese, dated August 21, 2014 ("Zacarese Dep."), annexed to RW Decl. as Ex. D, 10:25 – 11:9; Relevant excerpts of the deposition of Sergeant Joseph Cruzado, dated July 23, 2014 ("Cruzado Dep."), annexed to RW Decl. as Ex. E, 35:20 – 36:3.[4]

11.     At approximately 11:30 p.m. on November 21, 2009, all four officers were conducting gang surveillance in an unmarked Dodge Charger.  *See* Myers Dep., Ex. C, 17:14 – 22; Zacarese Dep., Ex. D, 82:3 – 5; Cruzado Dep., Ex. E, 42:11 – 14; 43:7 – 17; 44:18 – 24.

12.     Sergeant Cruzado drove the vehicle while Detective Myers sat in the front passenger seat, Lieutenant Zacarese sat in the rear behind Sergeant Cruzado, and Detective Ramos sat in the rear behind Detective Myers.  *See* Ramos Dep., Ex. B, 28:10 – 29:1.

13.     As his outer-most garment, Detective Ramos wore a ballistics vest with the word "POLICE" across it in three-inch, bold, white lettering. *See* Ramos Dep., Ex. B, 39:17 – 40:18.

---

[2]     Defendants note that the facts contained herein are undisputed solely for purposes of defendants' motion for summary judgment, and reserve the right to dispute any such fact in the event this motion is denied.

[3]     At the time of this incident, Detective Myers, Lieutenant Zacarese, and Sergeant Cruzado held the ranks of police officer, detective, and detective, respectively.

[4]     Number references refer to the page number and line of the relevant transcript.

14. As the officers drove west bound on Beach Channel Drive past Bayswater Park, Detective Myers drew the officers' attention to three (3) black males in the area. *See* Crime Scene Unit Map ("CSU Map") annexed to RW Decl. as Ex. F; *see also* Ramos Dep., Ex. B, 30:2 – 8; Myers Dep., Ex. C, 17:23 – 18:7; 19:22 – 20:6; Zacarese Dep., Ex. D, 31:7 – 21; 32:3 – 18; Cruzado Dep., Ex. E, 47:2 – 4; 58:11 – 16.

15. These three men included Dashawn Vasconcellos, Derbie Michel, and Cordel Rose. *See* Myers Dep., Ex. C, 27:12 – 14; 27:22 – 24; 28:9 – 13; Cruzado Dep., Ex. E, 62:17 – 20; 63:11 – 16; 65:21 – 24.

16. Sergeant Cruzado recognized Michel as a member of the Bloods gang. *See* Cruzado Dep., Ex. E, 63:16 – 21.

17. Vasconcellos, Michel, and Rose were on their way to a party. *See* Relevant excerpts of the deposition of Derbie Michel, dated March 5, 2015 ("Michel Dep."), annexed to RW Decl. as Ex. O, 73:14 – 17.

18. The officers decided to speak with Vasconcellos, Michel, and Rose. *See* Cruzado Dep., Ex. E, 67:7 – 17.

19. Sergeant Cruzado made a U-turn and proceeded in the opposite direction (east) such that the three men were on the right side of the vehicle near the parking lot of an adjacent shopping mall. *See* Ramos Dep., Ex. B, 30:22 – 31:3, 31:8 – 15; Myers Dep., Ex. C, 20:9 – 22; Zacarese Dep., Ex. D, 33:2 – 9; 34:2 – 5; Cruzado Dep., Ex. E, 67:7 – 17; *see also* CSU Map, Ex. F.

20. As Sergeant Cruzado pulled up, Detective Ramos and Detective Myers exited the vehicle and identified themselves as police officers. *See* Ramos Dep., Ex. B, 42:18 – 24; Myers Dep., Ex. C, 26:4 – 7.

21. In response, Vasconcellos, Michel, and Rose took off running. *See* Ramos Dep., Ex. B, 44:19 – 25, 116:23 – 117:13; Myers Dep., Ex. C, 41:4 – 11; Zacarese Dep., Ex. D, 35:3 – 8; Cruzado Dep., Ex. E, 71:24 – 2.

22. Michel and Rose ran north across the shopping mall parking lot; Detective Myers chased them on foot. *See* Myers Dep., Ex. C, 41:4 – 24; Zacarese Dep., Ex. D, 39:4 – 8; 39:15 – 40:4; Cruzado Dep., Ex. E, 72:3 – 25; 75:2 – 6; *see also* CSU Map, Ex. F.

23. Vasconcellos ran south across the shopping mall parking lot; Detective Ramos and Lieutenant Zacarese chased him on foot. *See* Ramos Dep., Ex. B, 44:25 – 45:6; 49:4 – 7; 117:14 – 21; Myers Dep., Ex. C, 41:4 – 17; Zacarese Dep., Ex. D, 41:13 – 42:4; Cruzado Dep., Ex. E, 80:9 – 16; 80:24 – 82:5; *see also* CSU Map, Ex. F.

24. Sergeant Cruzado made another U-turn, activated the vehicle's police lights, and headed toward Far Rockaway Boulevard, which runs directly behind, and parallel to, the line of stores in the shopping mall. *See* Cruzado Dep., Ex. E, 83:8 – 21; 84:4 – 9; *see also* CSU Map, Ex. F.

25. Detective Ramos and Lieutenant Zacarese chased Vasconcellos through the parking lot toward Far Rockaway Boulevard yelling, "Police!" *See* Ramos Dep., Ex. B, 50:5 – 16; Zacarese Dep., Ex. D, 43:23 – 25.

26. Detective Ramos and Lieutenant Zacarese drew their firearms. *See* Ramos Dep., Ex. B, 60:23 – 61:3; Zacarese Dep., Ex. D, 93:17 – 94:8.

27. Vasconcellos reached the end of the parking lot and turned left on to Far Rockaway Boulevard. *See* Ramos Dep., Ex. B, 59:22 – 60:3; Zacarese Dep., Ex. D, 61:11 – 14; *see also* CSU Map, Ex. F.

28. Sergeant Cruzado turned left on to Far Rockaway Boulevard, looked ahead, and saw Detective Ramos and Lieutenant Zacarese chasing Vasconcellos. *See* Cruzado Dep., Ex. E, 87:19 – 88:3; 93:12 – 94:2; *see also* CSU Map, Ex. F.

29. Sergeant Cruzado drove past Detective Ramos and Lieutenant Zacarese and pulled up alongside Vasconcellos. *See* Ramos Dep., Ex. B, 68:9 – 16; Cruzado Dep., Ex. E, 97:18 – 98:4.

30. Vasconcellos continued to run down Far Rockaway Boulevard and made a left on to Bay 32nd Street. *See* Ramos Dep., Ex. B, 69:5 – 13; Zacarese Dep., Ex. D, 71:3 – 17.

31. Sergeant Cruzado accelerated past Vasconcellos, turned left onto Bay 32nd Street, and stopped the vehicle in the street in an attempt to block Vasconcellos' path. *See* Ramos Dep., Ex. B, 71:21 – 72:5; Zacarese Dep., Ex. D, 78:7 – 18; 80:24 – 81:12; 84:17 – 85:22; Cruzado Dep., Ex. E, 105:19 – 25; 107:23 – 108:19; 110:23 – 111:10; *see also* CSU Map, Ex. F.

32. Sergeant Cruzado exited the vehicle with his firearm drawn. *See* Cruzado Dep., Ex. E, 115:17 – 116:8.

33. With Sergeant Cruzado blocking the street ahead of him, and Lieutenant Zacarese and Detective Ramos pursuing from behind, Vasconcellos cut to his right across Bay 32nd Street (from west to east). *See* Zacarese Dep., Ex. D, 78:7 – 18; 80:24 – 81:12; Cruzado Dep., Ex. E, 119:19 – 120:5; *see also* CSU Map, Ex. F.

34. As this occurred, Michel ran away from Detective Myers – who was pointing his firearm at Michel – toward Bay 32nd Street. *See* Michel Dep, Ex. O, 29:12 – 21; 31:11 – 32:3.

35. Michel reached Bay 32nd Street and saw Vasconcellos approximately 20 feet away. *See* Michel Dep, Ex. O, 32:4 – 6, 156:11 – 16.

36. Vasconcellos – who did not have a firearm or weapon of any kind – dropped to his knees, placed his hands above his head, and stated to the defendant officers, "I give up." *See* Michel Dep, Ex. O, 31:20 – 32:17; 36:15 - 21.

37. In response, Detective Ramos, Lieutenant Zacarese, and Sergeant Cruzado shot Vasconcellos repeatedly. *See* Michel Dep., Ex. O, 32:22 – 33:6.

38. Detective Ramos and Lieutenant Zacarese, Detective Ramos discharged his weapon one (1) time, Lieutenant Zacarese discharged his weapon eight (8) times in rapid succession, and Sergeant Cruzado discharged his weapon six (6) times in rapid succession. *See* Ramos Dep., Ex. B, 87:9 – 22; 92:13 – 20; 99:5 – 8; Myers Dep., Ex. C, 33:11 – 20; Zacarese Dep., Ex. D, 94:16 – 23; 96:4 – 8; 96:16 – 23; Cruzado Dep., Ex. E, 137:4 – 12.[5]

---

[5] Defendants, as they must, are construing the record in the light most favorable to plaintiff. *See Amtrak v. McDonald*, 978 F. Supp. 2d 215, 227 (S.D.N.Y. 2013). Though defendants do not substantively rely on the following, it bears noting – as the Court is surely aware – that the defendant officers have a very different recollection of the events of November 21, 2009 than Mr. Michel. According the defendant officers, Vasconcellos drew a firearm from his waistband during the foot-chase, *see* Ramos Dep., Ex. B, 52:9 – 53:7; Zacarese Dep., Ex. D, 55:17 – 20; 60:8 – 16, and attempted to insert a bullet into the chamber by "racking" the slide. *See* Zacarese Dep., Ex. D, 64:23 – 65:6; 65:24 – 66:6; Ramos Dep., Ex. B, 65:9 – 13. Despite being repeatedly told to drop the firearm, *see* Ramos Dep., Ex. B, 63:12 – 23; Zacarese Dep., Ex. D, 67:23 – 68:5; Cruzado Dep., Ex. E, 168:2 – 9, when Vasconcellos reached Bay 32nd Street, he raised his right arm and pointed it at Detective Ramos and Lieutenant Zacarese, who were approximately 25 feet away. *See* Ramos Dep., Ex. B, 84:4 – 14; 85:24 – 86:7; Zacarese Dep., Ex. D, 78:11 – 18; 81:6 – 12; 91:8 – 25; 100:25 – 101:19; 107:2 – 8; Cruzado Dep., Ex. E, 121:7 – 11. With Vasconcellos' firearm pointed at both officers, Detective Ramos, Lieutenant Zacarese, and Sergeant Cruzado discharged their weapons in Vasconcellos' direction. *See* Ramos Dep., Ex. B, 87:9 – 22; 92:13 – 20; 99:5 – 8; Myers Dep., Ex. C, 33:11 – 20; Zacarese Dep., Ex. D, 94:16 – 23; 96:4 – 8; 96:16 – 23; Cruzado Dep., Ex. E, 137:4 – 12. Vasconcellos' firearm – which remained on Bay 32nd Street following the shooting – was photographed, collected, and invoiced. *See* Crime Scene Photos, annexed to RW Decl. as Ex. H; *see also* NYPD Property Clerk Invoice # R033618, annexed to RW Decl. as Ex. I. The Crime Scene Unit determined that Vasconcellos' firearm – a 9mm semi-automatic pistol – contained 4 hollow point bullets and had its safety engaged. *See* Crime Scene Unit Supplemental Report, annexed to RW Decl. as Ex. J, at p. 1 (Evidence "W1"). On November 22, 2009, Vasconcellos' firearm was submitted to the NYPD Laboratory for a ballistics examination. *See* NYPD Request for Laboratory Examination Report, annexed to RW Decl. as Ex. K. On or about November 25, 2009, the Firearms Analysis

39. Sergeant Cruzado immediately radioed for an ambulance to respond to the scene. *See* Cruzado Dep., Ex. E, 148:4 – 10.

40. Detective Ramos remained with Vasconcellos until the ambulance arrived. *See* Ramos Dep., Ex. B, 109:7 – 11.

41. When shots were fired on Bay 32nd Street, Detective Myers was still in the shopping mall parking lot. *See* Myers Dep., Ex. C, 66:9 – 67:7; Cruzado Dep., Ex. E, 174:20 – 24.

42. Lieutenant Zacarese ran back to the parking lot to assist Detective Myers. *See* Zacarese Dep., Ex. D, 108:11 – 15.

43. Though Detective Myers could hear the shooting, he did not see it. *See* Myers Dep., Ex. C, 33:2 – 16; 55:7 – 23.

44. Detective Myers did not discharge his firearm at any point that evening. *See* Myers Dep., Ex. C, 70:13 – 16.

45. After additional NYPD officers arrived on the scene, Lieutenant Zacarese, Detective Myers, Detective Ramos, and Sergeant Cruzado were transported to the hospital. *See* Ramos Dep., Ex. B, 94:20 – 95:3; Myers Dep., Ex. C, 46:8 – 10; Zacarese Dep., Ex. D, 114:3 – 12; Cruzado Dep., Ex. E, 151:10 – 13.

---

Section ("FAS") of the NYPD Laboratory determined that Vasconcellos' firearm provided a ballistics match to bullets recovered from a gunshot victim who had been injured in a shooting just a few blocks away on October 11, 2009. *See* Firearms Discharge Review Board Investigating Officer's Report/Firearms Analysis Section record, annexed to RW Decl. as L; *see also* NYPD Complaint # 2009-101-03898, annexed to RW Decl. as Ex. M.

46. Vasconcellos was pronounced dead at Jamaica Hospital at approximately 12:45 a.m. on November 22, 2009. *See* Office of the Chief Medical Examiner Report of Autopsy ("OCME Report"), annexed to RW Decl. as Ex. G, at p. 15.[6]

47. Representatives of the NYPD's Internal Affairs Bureau attempted to interview Michel on the night of the shooting, but he refused to respond to their questions. *See* Michel Dep., Ex. O, 190:18 – 191:12; *see also* Transcript of Audio Recorded Interview of Derbie Michel, dated November 22, 2009, annexed to RW Decl as Ex. P, 2:1 – 3:6.

48. Following Vasconcellos' death, and prior to Michel's March 5, 2015 deposition,[7] Michel never informed the NYPD or the District Attorney's Office of what he purportedly witnessed on November 21, 2009. *See* Michel Dep., Ex. O, 191:13 – 192:5.

49. Rose, in the presence of his mother, Susan Barrios, agreed to be interviewed by representatives of the NYPD's Internal Affairs Bureau ("IAB") on the night of the shooting. *See* Relevant excerpts of the Transcript of IAB Audio Recorded Interview of Cordel Rose, dated November 22, 2009 ("Rose IAB Interview"), annexed to RW Decl as Ex. Q, 2:1 – 17.

50. According to Rose, when several police officers began to chase Vasconcellos, both Rose and Michel were immediately apprehended and cuffed on the ground of the parking lot.[8] *See* Rose IAB Interview, Ex. Q, 11:6 – 11; 13:11 – 14:4.

---

[6] Defendants have added pages numbers to the bottom right hand corner of the OCME Report for the Court's convenience.

[7] Mr. Michel's deposition was originally scheduled to be held in December 2014, but following the failure of plaintiff's counsel – Michael Colihan, Esq. – to appear for same, Mr. Colihan was sanctioned more than $3,000. *See* Docket Entry Nos. 141, 145.

[8] Rose's explanation to IAB that both he and Michel were immediately apprehended and unable to observe the shooting (which Michel contradicted at his deposition) matches Detective Myers' explanation regarding same. *Compare* Myers Dep., Ex. C, 30:14 – 31:14; 32:16 – 25; 33:2 – 16; 55:7 – 23.

51. While on the ground, Rose and Michel heard gunfire. *See* Rose IAB Interview, Ex. Q, 14:15 – 22; 16:19 – 23.

52. Rose and Michel could not tell what direction the gunfire originated from. *See* Rose IAB Interview, Ex. Q, 15:25 – 16:8.

53. The Office of the Chief Medical Examiner performed an autopsy on November 22, 2009 and determined that Vasconcellos had been shot eleven (11) times. *See* OCME Report, RW Decl., Ex. G, at pp. 5, 6 – 12.

54. Erica Vasconcellos was not present for the shooting and has no personal knowledge of whether Vasconcellos possessed a firearm on November 21, 2009. *See* Relevant excerpts of the deposition of Erica Vasconcellos, dated June 26, 2014, annexed to RW Decl. as Ex. N, 117:8 – 22.

Dated: New York, New York
July 17, 2015

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
*Attorney for Defendants City of New York, Sergeant Cruzado, Detective Ramos, Detective Myers, and Lieutenant Zacarese*
100 Church Street, Room 3-188
New York, New York 10007
(212) 356-2356

By: /s/
Richard Weingarten
*Assistant Corporation Counsel*
Special Federal Litigation

TO: **BY ECF and MAIL**
Michael Colihan, Esq.
Attorney for *Plaintiff*
44 Court Street, Suite 906
Brooklyn, New York 11201