UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ERICA VASCONCELLOES as Administratrix
of the Estate of Dashawn Vasconcellos, deceased
and ERICA VASCONCELLOS, individually,

        Plaintiff,

    -against-                                                 12 Civ. 8445 (CM)(HBP)

THE CITY OF NEW YORK,
SERGEANT JOSEPH CRUZADO, Sh. #11022,
DET. RAFAEL RAMOS, Sh. # 6794,
DET. DONNELL MYERS, Sh. #10314,
SERGEANT RICHARD ZACARESE, Sh.#1818,

        Defendants.

------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER DENYING CITY OF NEW YORK'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

      Plaintiff, Erica Vasconcellos commenced this action against defendants City of New York, Sergeant Cruzado, Detective Ramos, Detective Myers, and Lieutenant Zacarese, pursuant to 42 U.S.C. § 1983 on behalf of her deceased son, Dashawn Vasconcellos ("Vasconcellos"), who was shot and killed by several police officers. The Amended Complaint alleges that the Defendant-police officers, "without probable cause and without a warrant, unlawfully approached, shot and killed [Dashawn Vasconcellos]." (Amended Complaint ¶ 14). The Complaint alleges that the Defendant-City of New York is liable for her son's death for its failure to properly train and supervise the defendant-police officers. (*Id.* at ¶ 28).

1

Defendants previously moved to dismiss under Federal Rules of Civil Procedure 12(c) and 12(b) (6), arguing that (1) Plaintiff failed to state a claim against the City of New York under *Monell v. Departm ent of Social Services,* 436 U.S. 658 (1978); (2) the complaint failed to state a claim against the Officer Defendants for unlawful use of deadly force; (3) the claims against the Officer Defendants were time-barred; and Erica Vasconcellos lacked standing to bring any claims in her individual capacity. On October 2, 2015, the Court granted the individual Defendants' motions, dismissing the claims against them on statute of limitation grounds, but denied the City Defendant's motion to dismiss the municipal liability (*Monell*) claim against it (as brought by Ms. Vasconcellos, specifically, and only, in her capacity as administratrix of her son's estate). (*See* Docket Entry No. 52, at p. 21).

Shortly after the motion to dismiss was decided, the City notified the Court of its intention to file a summary judgment seeking dismissal of the remaining *Monell* claim. In a letter to the Court dated October 31, Defendants requested that the Court bifurcate discovery with respect to the *Monell* claim and that no discovery into municipal liability be allowed until after the motion for summary judgment was adjudicated and only if Plaintiff prevailed on the motion. Defendants argued that the a bifurcation and stay of *Monell* discovery was warranted because (1) after years of litigation and much fact discovery there was no evidence to contradict defendants' version of events "that Vasconcellos pointed a firearm at one of them during a foot chase," and (2) "considerations of efficiency and convenience weigh strongly in favor bifurcation before undertaking the far more burdensome and time consuming task of litigating plaintiff's *Monell* claim." (Docket Entry No. 63 at 3-4, Letter from Law Department to Court, dated October 31, 2014). The Court agreed any *Monell* discovery would await and abide the Court's decision on defendants' summary judgment motion. *Id.* (Memo Endorsement: "After thinking a lot about this,

2

I am granting the City's request - contingent on the City's making its motion by 12/12/2014."). The Court subsequently extended the deadline for Defendants to file their motion several times, which the City ultimately filed on July 17, 2015.

For the reasons state herein, the City's Motion is denied.

Summary Judgment Standard

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in his or her favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the motion for summary judgment is properly made, the burden shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but must support the existence of an alleged dispute with specific citation to the record materials. Fed. R. Civ. P. 56(c).

While the Court must view the record "in the light most favorable to the nonmoving party," *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir. 1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom

summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586 (citations omitted). Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

<u>Standard for Finding Municipal Liability</u>

In order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. *Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694-95. "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). "To establish *Monell* liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." *Mercado v. City of New York*, 08 Civ. 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (*quoting Monell*, 436 U.S. at 691, 694).

To state a claim for municipal liability, a plaintiff must plausibly allege one of four different types of violations: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, *Monell*, 436 U.S. at 690; (2) the official responsible for establishing

4

policy, with respect to the subject matter in question to the specific action, caused the alleged violation of the plaintiff's rights, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)(plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985)(plurality opinion), *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).

If liability is based on the failure to train or supervise, a plaintiff must show "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Second Circuit has set forth three requirements "for showing that a lack of training or supervision manifests deliberate indifference." *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006)(*citing Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)). *First*, "the plaintiff must . . . allege that 'a policy-maker knows to a moral certainty that her employees will confront a given situation.'" *Id.* at 80-81 (*quoting Walker*, 974 F.2d at 297). *Second*, the situation must "either present the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation." *Id.*

*Third*, mishandling of the situation must "frequently cause the deprivation of a citizen's constitutional rights." *Id.*

Germane for this case is that: "Whether to use deadly force in apprehending a fleeing

suspect qualifies as a "difficult choice" because more than the application of common sense is required." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). "Instead, police officers must adhere to the rule of *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that deadly force may constitutionally be applied to a fleeing suspect only when 'the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm' and when, 'where possible, some warning has been given,' *Tennessee v. Garner,* at 11-12." *Id.* "A choice might also be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice." *Id.*

The City's Motion

The City's argument why the Court should grant summary judgment in its favor and dismiss the *Monell* claim is now markedly different from the argument the City made in its October 2014 letter. It had been the City's position that, after years of litigation, there was no evidence to controvert the police-officer defendants' story of a justified shooting of a person carrying a pistol; therefore, no evidence that the individual defendants committed a constitutional violation and, as such, no basis for a *Monell* claim against the City. (Docket #60, Letter from Defendants, dated October 31, 2014).

That was before non-party witness Derbie Michel—present at the scene when Vasconcellos was shot by the police—was deposed by the parties. Michel testified *inter alia* that he was twenty feet away from Vasconcellos when he witnessed the police officers fire their weapons at an unarmed Vasconcellos, who was on his knees, with his hands in the air, telling the officers "I Give up." (Docket #155, Declaration of Michael Colihan in Opposition to SJM, Exhibit #1, deposition transcript of Non-party witness, Derbie Michel).

In light of Michel's testimony, the City now says that—*for the purposes of its summary judgment motion only*—it adopts *inter alia* the following facts as undisputed:

> At approximately 11:30 p.m. on November 21, 2009, Lieutenant Zacarese, Sergeant Cruzado, Detective Ramos, and Detective Myers were conducting gang surveillance in Far Rockaway. *See* Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs' 56.1"), at ¶ 11. As they drove by Bayswater Park, they observed Vasconcellos, Derbie Michel, and Cordel Rose. Defs' 56.1 at ¶¶ 14, 15. The officers attempted to stop Vasconcellos, Michel, and Rose, but the three men fled. Defs' 56.1 at ¶¶ 18 – 21. Detective Myers chased Michel and Rose, while Lt. Zacarese and Detective Ramos pursued Vasconcellos on foot and Sergeant Cruzado followed in his vehicle. Defs' 56.1 at ¶¶ 22 – 24. After running through several streets encircling an adjacent shopping mall, Vasconcellos ended up on Bay 32nd Street. Defs' 56.1 at ¶¶ 27, 30. With Sgt. Cruzado's vehicle blocking Vasconcellos' path from the front, and Lt. Zacarese and Detective Ramos approaching from the rear, Vasconcellos – who did not possess any weapons – dropped to his knees, raised his hands in the air, and stated, "I give up." Defs' 56.1 at ¶¶ 33, 36. Despite Vasconcellos' unconditional surrender, and though he was surrounded, Lt. Zacarese, Sgt. Cruzado, and Detective Ramos opened fire. Defs' 56.1 at ¶¶ 33, 37, 38. Detective Ramos discharged his weapon one (1) time, Lieutenant Zacarese discharged his weapon eight (8) times in rapid succession, and Sergeant Cruzado discharged his weapon six (6) times in rapid succession. Defs' 56.1 at ¶ 38. Vasconcellos sustained eleven gunshot wounds and was pronounced dead during the early morning hours of November 22, 2009 at Jamaica Hospital. *Id.* at ¶¶ 46, 53.[1]

---

[1] The City obliged to drop a footnote at paragraph 38 of its' Rule 56.1 statement (the place in the City's Rule 56.1 statement where the narrative shifts from the officers to that of Mr. Michel), reminding the Court just how much the City and the individual defendants disagree with what appears in the text above. It also advises the Court that the gun that defendant possessed (the gun we are for the moment agreeing that he did not possess) was used in another shooting only weeks before Vasconcellos turned the gun on the officers:

> Though defendants do not substantively rely on the following, it bears noting – as the Court is surely aware – that the defendant officers have a very different recollection of the events of November 21, 2009 than Mr. Michel. According the defendant officers, Vasconcellos drew a firearm from his waistband during the foot-chase, *see* Ramos Dep., Ex. B, 52:9 – 53:7; Zacarese Dep., Ex. D, 55:17 – 20; 60:8 – 16, and attempted to insert a bullet into the chamber by "racking" the slide. *See* Zacarese Dep., Ex. D, 64:23 – 65:6; 65:24 – 66:6; Ramos Dep., Ex. B, 65:9 – 13. Despite being repeatedly told to drop the firearm, see Ramos Dep., Ex. B, 63:12 – 23; Zacarese Dep., Ex. D, 67:23 – 68:5; Cruzado Dep., Ex. E, 168:2 – 9, when Vasconcellos reached Bay 32nd Street, he raised his right arm and pointed it at Detective Ramos and Lieutenant Zacarese, who were approximately 25 feet away. *See* Ramos Dep., Ex. B, 84:4 – 14; 85:24 – 86:7; Zacarese Dep., Ex. D, 78:11 – 18; 81:6 – 12; 91:8 – 25; 100:25 – 101:19; 107:2 – 8; Cruzado Dep., Ex. E, 121:7 – 11. With Vasconcellos' firearm pointed at both officers, Detective Ramos, Lieutenant Zacarese, and Sergeant Cruzado discharged their weapons in Vasconcellos' direction. *See* Ramos Dep., Ex. B, 87:9 – 22; 92:13 – 20; 99:5 – 8; Myers Dep., Ex. C,

7

Pivoting away from its argument that summary judgment in its favor was warranted because there was no evidence that the defendant officers' shooting of Vasconcellos was not justified, the City now argues that the Court should grant it summary judgment "because any *Monell* discovery plaintiff could ultimately be provided if the motion were denied, would never demonstrate that the officers' decision to kill Vasconcellos in such an unjustified and cruel manner was a difficult choice of the sort that training or supervision would make less difficult." (City Defendant's Memorandum In Support of Summary Judgment at 7). The City posits that "common sense dictates that the heinous murder of Vasconcellos – as described by Michel – was unconstitutional and illegal without the need for training or supervision," and that "the City is entitled to rely on a common sense theory that its officers – even without training – would not behave this way." *Id.*

The City cites various case for the proposition that *Monell* liability cannot lie for a municipality's failure to train its officers, where the bad behavior of its officers was so obviously unconstitutional that the municipality was entitled to rely on a common sense assumption that its officers would not behave in such an egregious manner. *See e.g., Doe v. City of New*

---

33:11 – 20; Zacarese Dep., Ex. D, 94:16 – 23; 96:4 – 8; 96:16 – 23; Cruzado Dep., Ex. E, 137:4 – 12. Vasconcellos' firearm – which remained on Bay 32nd street following the shooting – was photographed, collected, and invoiced. *See* Crime Scene Photos, annexed to RW Decl. as Ex. H; see also NYPD Property Clerk Invoice # R033618, annexed to RW Decl. as Ex. I. The Crime Scene Unit determined that Vasconcellos' firearm – a 9mm semi-automatic pistol – contained 4 hollow point bullets and had its safety engaged. *See* Crime Scene Unit Supplemental Report, annexed to RW Decl. as Ex. J, at p. 1 (Evidence "W1"). On November 22, 2009, Vasconcellos' firearm was submitted to the NYPD Laboratory for a ballistics examination. See NYPD Request for Laboratory Examination Report, annexed to RW Decl. as Ex. K. On or about November 25, 2009, the Firearms Analysis Section ("FAS") of the NYPD Laboratory determined that Vasconcellos' firearm provided a ballistics match to bullets recovered from a gunshot victim who had been injured in a shooting just a few blocks away on October 11, 2009. *See* Firearms Discharge Review Board Investigating Officer's Report/Firearms Analysis Section record, annexed to RW Decl. as L; *see* also NYPD Complaint # 2009-101-03898, annexed to RW Decl. as Ex. M.

(Docket #168, Defendants' Rule 56.1 Statement at 7, ¶38, n.5).

*York*, 2013 U.S. Dist. LEXIS 30010, at *14-15 (S.D.N.Y. Mar. 14, 2013)("Plaintiff has not plausibly alleged that either [the defendant officer's] decision to rape [plaintiff] or [another defendant officer's] decision to aid and abet that rape was a 'difficult choice of the sort that training or supervision will make less difficult.' It goes without saying that a police officer is prohibited from sexually assaulting an intoxicated woman when responding to a 911 call."); *Kogut v. County of Nassau*, 06 CV 6695(JS)(WDW), 2012 U.S. Dist. Lexis 121458, at *13 (E.D.N.Y. Aug. 27, 2012)("[T]o the extent that Plaintiffs rely on [an] expert report to show that the County was deliberately indifferent to the need to train its detectives not to physically abuse suspects in pursuit of a confession, this type of misconduct is so beyond the pale that--absent notice to the contrary--the County was entitled to rely on a common sense assumption that its officers would not behave this way"); *Marquez v. Town of Dewitt*, 11 CV 750 (FJS), 2015 U.S. Dist. LEXIS 9523, at *12 (N.D.N.Y. Jan. 28, 2015)(dismissing plaintiff's failure-to-train claim on summary judgment because there was "no allegation that the officers [when supervising visitors in the courtroom gallery] would have to use *anything more than their common sense* in deciding whether to remove individuals from the gallery")(emphasis added); *Atwood v. Town of Ellington*, 427 F. Supp. 2d 136, 145-146 (D. Conn 2006)(dismissing failure-to-train claim on summary judgment because it was a common sense judgment for an officer not to have sexual relations with an intoxicated woman that he took to a hotel during the course of his duties).

The City's attempt to shield itself from the scrutiny of *Monell* discovery by cleverly characterizing this case as falling under the cited "common sense" line of cases is unavailing. Accepting as true that the police chased, shot, and killed a surrendering, unarmed Vasconcellos—a version of events wholly contradicted by the individual defendants' deposition testimony, as well as other evidence in the record—the officers' decision to use

deadly physical force against Vasconcellos was nonetheless precisely the type of "difficult choice" the Second Circuit talked about in *Walker, supra* at 297-98. A reasonable jury could easily conclude that once the chase was initiated, rightfully or wrongfully, a difficult choice was presented to the officers, and that for some reason *short of premeditated murder*—perhaps some deficiency in training that made the officers misperceive the situation, or something intrinsic about one or more of the officers that could and should have been addressed through appropriate supervision—one or more of the officers made the fatally wrong choice.

In short, what happened on the night Dashawn Vasconcellos was shot and killed by the police, and whether the individual defendants *truly* violated Vasconcellos Constitutional rights are open questions, preluding summary judgment in favor of the City on the *Monell* claim.

The City's insistence that the record of the shooting can only be construed as being the cold blooded execution of Vasconcellos would certainly have been in the light most favorable to plaintiff had this been a motion for summary judgment in favor of the individual defendants. However, this is a motion for dismissal of the *Monell* claims against the City defendant only. The construal of the record on this motion must therefore be in the light most favorable to plaintiff *on this motion*. Plaintiff's argument in the present motion is not necessarily that the officers murdered Vasconcellos in cold blood, but that they killed an unarmed man for lack of proper training in handling the particular situation and for firing multiple, and an excessive number of rounds without assessing the situation properly. It is clear that a rational jury might very well conclude that this was a cold blooded execution by rogue cops for which the City is not liable. But a rational jury looking at conflicting testimonies as they are now known might indicate that the officers shot an unarmed man as a result of poor training, or that the shooting was enabled by the City's failure to supervise one or more of the individual defendants.

The City's motion for summary judgment is denied.

The stay on *Monell* discovery is hereby lifted, and ordered to be completed before September 1, 2016.[2]

This constitutes the decision and order of the Court.

January 28, 2016

_____
Colleen McMahon, U.S.D.J.

---

[2] The City is wrong to read the Court's October 2014 decision as circumscribing the breadth of Plaintiff's *Monell* claim, especially in light the Michel deposition testimony (taken after the Court ruled on the Motion to Dismiss), and all that plaintiff was able to unearth about the police-officer defendants' disciplinary histories during fact discovery. Plaintiff may pursue both the failure to train and failure to supervise arms of her *Monell* claim.